SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
PHILIP F. ATKINS-PATTENSON, Cal. Bar. No. 94901
TED C. LINDQUIST, III, Cal. Bar No. 178523
Four Embarcadero Center, Seventeenth Floor
San Francisco, California 94111
Telephone: (415) 434-9100
Facsimile: (415) 434-3947
E-mail: patkinspattenson@sheppardmullin.com
        tlindquist@sheppardmullin.com

Attorneys for Defendant
ALASKA AIRLINES, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# (SAN FRANCISCO DIVISION)

| | |
|---|---|
| KENNETH DON NELSON, suing individually and on behalf of all others similarly situated, | Case No. C:08-03560 (JSW) |
| Plaintiff, | **CLASS ACTION** |
| v. | **DEFENDANT ALASKA AIRLINES, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND** |
| ALASKA AIRLINES, INC., and defendant Does 1 through 100, inclusive. | Date:       October 17, 2008<br>Time:       9:30 a.m.<br>Courtroom:  2 (17th Floor)<br>Before:     The Hon. Jeffrey S. White |
| Defendants. | |

# **TABLE OF CONTENTS**

Page

I.      INTRODUCTION AND SUMMARY OF ARGUMENT...........................................1

II.     STATEMENT OF ISSUES TO BE DECIDED...........................................................1

III.    ARGUMENT...........................................................................................................2

      A.      REMOVAL WAS PROPER AND THIS COURT HAS
           JURISDICTION BECAUSE THE MONTREAL CONVENTION
           COMPLETELY PREEMPTS PLAINTIFF'S CLAIMS.................................2

      B.      PLAINTIFF'S CLAIMS FALL WITHIN THE SCOPE OF THE
           MONTREAL CONVENTION.....................................................................8

      C.      PLAINTIFF WAS NOT WITHOUT A REMEDY .....................................12

IV.     CONCLUSION AND REQUESTED RELIEF.........................................................13

W02-EAST:9RGG1\200125511.2
Case No.:   C:08-03560 (JSW)

OPPOSITION TO MOTION FOR REMAND

# TABLE OF AUTHORITIES

**Federal Cases**

*Beneficial National Bank v. Anderson,*
   539 U.S. 1 (2003) ................................................................ 2, 4

*Boehringer-Mannheim Diagnostics, Inc. v. Pan American World Airways, Inc.,*
   737 F.2d 456 (5th Cir. 1984) ............................................. 3

*Daniel v. Virgin Atlantic Airways Ltd.,*
   59 F. Supp. 2d 986 (N.D. Cal. 1998) ............................... 7

*Day v. Trans World Airlines, Inc.,*
   393 F. Supp. 217 (S.D.N.Y. 1975) .................................. 10

*Donkor v. British Airways,*
   62 F. Supp. 2d 963 (E.D.N.Y. 1999) .............................. 3

*El Al Israeli Airlines, Ltd. v. Tsui Yuan Tseng,*
   525 U.S. 155 (1999) ...................................... 2, 3, 4, 5, 6, 7, 8, 11

*Husmann v. TWA,*
   169 F.3d 1151 (8th Cir. 1999) ......................................... 3, 7

*In re Mexico City Aircrash,*
   708 F.2d 400 (9th Cir. 1983) ........................................... 2, 3, 7

*King v. American Airlines, Inc.,*
   284 F.3d 352 (2d Cir. 2002) ............................................ 8, 10

*Knowlton v. American Airlines,*
   Civil Action No. RDB-06-854, 2007 WL. 273794
   (D. Md. January 31, 2007) ............................................... 5, 6, 7, 13

*Mbaba v. Societe Air France,*
   457 F.3d 496 (5th Cir. 2006) ........................................... 10

*Nigeria Charter Flights Contract Litigation,*
   520 F. Supp. 2d 447 (E.D.N.Y. 2007) ............................ 6

*Paradis v. Ghana Airways Ltd.,*
   348 F. Supp. 2d 106 (S.D.N.Y. 2004) ............................. 4, 7

*Potter v. Delta Air Lines,*
   98 F.3d 881 (5th Cir. 1996) ............................................. 3

*Schmeling v. NORDAM,*
   97 F.3d 1336 (10th Cir. 1996) ......................................... 7

*Serrano v. American Airlines, Inc., No. CV 08-2256 AHM (FFMx),*
   2008 WL. 2117239
   (C.D. Cal. May 15, 2008) ................................................. 7

1

*Singh v. North American Airlines,*
      426 F. Supp. 2d 38 (E.D.N.Y. 2006) ...........................................................3, 4, 7, 10

2

*Twardowski v. American Airlines, Inc., et al.,*
      Nos. 06-96-16726, 2008 WL. 2908101
      (9th Cir. July 30, 2008) ....................................................................................... 2

3

4

*Weiss v. El Al Israel Airlines Ltd.,*
      433 F. Supp. 2d 361 (S.D.N.Y. 2006)....................................................................... 6

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W02-EAST:9RGG1\200125511.2                                   OPPOSITION TO MOTION FOR REMAND
Case No.:   C:08-03560 (JSW)

Defendant Alaska Airlines, Inc. ("Alaska") respectfully submits this opposition to Plaintiff's motion to remand.

## I.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff's motion for remand should be denied. As set forth in Alaska's Notice of Removal (Dkt. # 1), and reiterated in this opposition brief, removal was proper and this Court has jurisdiction because Plaintiff's claims are completely preempted by the Montreal Convention in that the Convention "wholly displaces" state law causes of action arising out of an occurrence that falls within the scope of the Montreal Convention. Plaintiff's challenge to Alaska's handling of the Mexican Tourism Tax clearly falls within the scope of the Montreal Convention as the operative "occurrence" took place either when Plaintiff was onboard the Alaska flights (and subject to the additional $22 charge), or when he was in the "embarkation" process for those flights (*i.e.*, during check-in for his flight from California and/or check-in for his return flight to California). Thus, Alaska's removal was proper, and Plaintiff's remand motion should be denied.

## II.

## STATEMENT OF ISSUES TO BE DECIDED

Pursuant to Local Rule 7-4, Alaska submits that the issues to be decided are:

1.    Whether the Montreal Convention provides complete preemption of Plaintiff's claims in the Complaint, so as to provide a proper basis for removal to this Court; and

2.    Whether Plaintiff's claims in the Complaint fall within the scope of the Montreal Convention.

1

**III.**

2

**ARGUMENT**

3

**A.    REMOVAL WAS PROPER AND THIS COURT HAS JURISDICTION**
   **BECAUSE THE MONTREAL CONVENTION COMPLETELY PREEMPTS**

4

   **PLAINTIFF'S CLAIMS**

5

6

The Supreme Court has held that "a state claim may be removed to federal court . . .

7

when a federal statute wholly displaces the state-law cause of action through complete

8

preemption." (*Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).)  The

9

Montreal Convention clearly displaces all state law causes of action that are based on an

10

occurrence which falls within the scope of the Convention.

11

Article 1 of the Montreal Convention declares that the "Convention ***applies to all***

12

***international carriage of persons***, baggage, or cargo ***performed by aircraft for reward***."

13

(Convention, Art. 1(1) (emphasis added).)[1]  Plaintiff was involved in "international

14

carriage" when traveling onboard Alaska Airlines between the United States and Mexico

15

because "[i]nternational carriage" means "any carriage in which . . . the place of departure

16

and the place of destination . . . are situated . . . within the territories of two States Parties

17

. . . ." (Convention, Art. 1(2).)

18

In *In re Mexico City Aircrash*, 708 F.2d 400 (9th Cir. 1983), the court held that "the

19

Warsaw Convention creates [an exclusive federal] cause of action for wrongful death . . .

20

and the questions of who are entitled to assert that cause of action and what are their

21

respective rights may be" are to "be determined by reference to other federal statutes."  (*Id.*

22

at 415.)  Fifteen years later, the Supreme Court held that state law claims cannot be

23

pursued with regard to occurrences that fall within the scope of the Warsaw Convention.

24

(*El Al Israeli Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 171-72 (1999); *see also*

25

*Twardowski v. American Airlines, et al.*, Nos. 06-96-16726, 2008 WL 2908101

26

_____

27

[1]    A true and correct copy of the Montreal Convention is attached as Exhibit B to
Alaska's Notice Of Removal, filed July 24, 2008.  (Dkt. # 1.)

28

1   (9th Cir. July 30, 2008), at *2 (the "recovery for a personal injury suffered on board an

2   aircraft or in the course of any of the operations of embarking or disembarking [an

3   aircraft], if not allowed under the Convention, is not available at all") (quotation and

4   citation omitted).)[2]

5        Plaintiff wants this Court to reject the decisions of multiple courts which "have held

6   that the Warsaw Convention [the predecessor to the Montreal Convention] **does**

7   **completely preempt those claims that fall within its scope**." (*Singh v. North American*

8   *Airlines*, 426 F.Supp.2d 38, 45 (E.D.N.Y. 2006) (emphasis added) (citing *Potter v.*

9   *Delta Air Lines,* 98 F.3d 881, 883 (5th Cir. 1996); *Boehringer-Mannheim Diagnostics, Inc.*

10  *v. Pan American World Airways, Inc.,* 737 F.2d 456, 458 (5th Cir. 1984); *Husmann v.*

11  *TWA,* 169 F.3d 1151, 1153 (8th Cir. 1999); *In re Mexico City Aircrash, supra*, 708 F.2d at

12  415 (9th Cir. 1983); *Donkor v. British Airways*, 62 F.Supp.2d 963, 967 (E.D.N.Y. 1999),

13  and other cases).)

14       For example, in *Husmann, supra*, the plaintiff alleged he had been injured while

15  boarding an airplane in London. The Eighth Circuit affirmed the trial court's decision

16  denying the plaintiff's motion for remand, holding that removal was proper because

17  "[*p*]*ermitting a state court action would undermine the 'uniformity' and 'certainty'*

18  *embodied in the Warsaw Convention*." (*Husmann*, 769 F.3d at 1163 (emphasis added).)[3]

19  Similarly here, removal of Plaintiff's state court action to this Court was proper because

20  permitting a state court action in connection with collection of a foreign-government

21  mandated tax relating to international air transportation would similarly "undermine the

22  uniformity and certainty embodied in" the successor Montreal Convention. (*See also*

23  _____

24  [2]    Plaintiff asserts that *dicta* in *In re Mexico City Aircrash* supports a finding of no
    complete preemption. (Mot. at 7-8 (citing 708 F.2d at 414 n.25).) However, this assertion

25  conflicts with the actual holding of that case – namely, that the Warsaw Convention
    provided the exclusive basis for plaintiff's wrongful death claim. It also cannot be squared

26  with the Supreme Court's holding in *Tseng, supra*.

27  [3]    Significantly, in its moving papers, Plaintiff fails even to mention, much less
    distinguish, *Husmann*.

28

W02-EAST:9RGG1\200125511.2                                OPPOSITION TO MOTION FOR REMAND
Case No.:  C:08-03560 (JSW)

1   *Paradis v. Ghana Airways Ltd.,* 348 F.Supp.2d 106, 111, 114 (S.D.N.Y. 2004) (plaintiff's

2   breach of contract claim for a flight cancellation was preempted by both the Montreal and

3   Warsaw Conventions, because the treaties "preempt all state law claims within their

4   scope").)

5          However, Plaintiff fails to rebut the outcome of, or rationale behind, any of the

6   cases.  For example, Plaintiff's attempt to distinguish the finding of complete preemption

7   in *Singh* is entirely unavailing.  Plaintiff states that the court relied "on an analysis of

8   merits of preemption defense to find complete preemption justifying federal jurisdiction."

9   (Mot. at 5 n.10.)  That is not correct.  In fact, the court concluded that the Warsaw

10  Convention completely preempted the passenger's claim after applying the two-part test

11  for complete preemption set forth by the Supreme Court in *Beneficial, supra.*  (*Singh,*

12  426 F.Supp.2d at 42-45.)  The *Singh* court stated:

13         The Supreme Court has not held in *haec verba* that the Warsaw Convention
           provides complete preemption.  However, in . . . *Tseng,* 525 U.S. 155, 161
14         . . . which was decided before the Court set out the two prong test for
           complete preemption in *Beneficial*, the Court concluded that the Warsaw
15         Convention precludes a passenger from seeking remedies in state court for
           injuries that fall within the scope of the Convention but for which the
16         Convention provides no relief.  In reversing the Second Circuit Court of
           Appeals, the Court held that the Warsaw Convention created the exclusive
17         remedy for causes of action within its scope.  The Court explicitly held that
           'recovery for a personal injury suffered on board an aircraft or in the course
18         of any of the operations of embarking or disembarking, if not allowed
           under the Convention, is not available at all.' . . . After an exhaustive
19         review of the treaty provisions, the Court concluded that the 'text, drafting
20         history, and underlying purpose of the Convention, in sum, counsel us to
           adhere to a view of the treaty's exclusivity shared by our treaty partners.'
21

22

23  (*Id*. at 4.)

24         The *Singh* court added that "[t]he provisions of the Warsaw Convention also meet

25  the second prong of the *Beneficial* analysis, in that the statute sets forth procedures and

26  remedies governing the exclusive cause of action provided therein."  (*Id*.)  The court

27  explained:

28

1
2
3
4
5
6
7
8
9
10

The Convention sets out detailed procedures for the causes of actions it creates and states which remedies are available for each. Article 17 addresses liability for injury to passengers, Article 18 provides for liability to luggage, and Article 19 establishes liability in cases of delay.  Articles 20 and 21 provide the carrier with certain defenses it may impose, Article 22 sets limitations on damages and Article 23 invalidates other limitations on liability.  Article 24 provides for the exclusivity of the Convention for causes of action brought under Articles 17, 18 and 19.  Article 25 provides that the limits on damages shall not apply in cases of willful misconduct.  Article 26 provides for evidentiary presumptions with regard to liability for luggage.  Article 27 allows the next of kin to sue on behalf of the deceased in case of death.  Article 28 establishes in what jurisdictions a cause of action may be brought and provides that the suit shall be governed by that court's procedures.  Article 29 provides a statute of limitations of two years.  Finally, Article 30 sets out rules for apportioning liability among multiple defendants.

11
12

(*Id*. at 44-45.)

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff also fails to distinguish *Knowlton v. American Airlines*, Civil Action No. RDB-06-854, 2007 WL 273794 (D. Md. January 31, 2007), where the court held that the Montreal Convention completely preempted a passenger's state law claim that she was improperly denied a free breakfast onboard her flight.  Similar to the Plaintiff here, the passenger in *Knowlton* argued that the Warsaw and Montreal Conventions "only address claims for personal injury, property damage, and damage caused by delay during international flights."  (*Id*. at *1.)  In rejecting this narrow interpretation, the court emphasized that Articles 17, 18 and 19 of the Montreal Convention are meant to be "exclusive and encompass the scope of international airline liability.  Article 29 of the treaty contains an express statement of exclusivity:  'any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention'."  (*Id*. at *2.)  The court also noted that "***several courts have . . . taken the position that the Warsaw Convention completely preempts all claims arising out of***

-5-

*international flights*." (*Id*. at \*4) (emphasis added).)  The court explained its finding of complete preemption as follows:

> There is clearly a split of authority over whether the Montreal Convention and its predecessor completely preempt state law claims such as this one. ***However, this Court is persuaded by the reasoning of those cases finding in favor of preemption.***  The treaties were designed to create a uniform system of liability among airlines for claims arising from international flights. *See Tseng*, 525 U.S. at 169 ('Given the [Warsaw] Convention's comprehensive scheme of liability rules and its textual emphasis on uniformity, we would be hard put to conclude that the delegates at Warsaw meant to subject air carriers to the distinct, nonuniform liability rules of the individual signatory nations.') ***As a matter of public policy, airlines should not be subject to contract claims in state courts involving a three-dollar breakfast.***

(*Id*. at \*5 (emphasis added).)

Rather than address the merits of the well-reasoned decision in *Knowlton*, the Plaintiff unsuccessfully tries to dismiss it out-of-hand as "curious." (Mot. at 5 n.10.)  Far from being curious, *Knowlton's* rationale is straight forward and applies with equal force here.  Just as airlines should not be subject to contract claims in state courts involving a three-dollar breakfast, they should not be subject to contract claims in state courts involving a $22 tax.

Finally, none of the cases relied on by Plaintiff applies here.  In both *Weiss v. El Al Israel Airlines Ltd.*, 433 F.Supp.2d 361 (S.D.N.Y. 2006), and *In re Nigeria Charter Flights Contract Litigation*, 520 F.Supp.2d 447 (E.D.N.Y. 2007), the court held that the refusal to provide transportation to a passenger was not a claim for delay damages covered under the Montreal Convention but, rather, a claim for breach of contract outside the Convention's scope.  (*See Weiss*, 433 F.Supp.2d at 366 ("bumping, at least under the circumstances alleged in the Complaint, is not covered by the Convention"); *Nigeria*, 520 F.Supp.2d at 453 (passengers left stranded by airline's refusal to fly "allege[d] nonperformance, not delay").  However, Plaintiff here is not seeking damages for failure to provide promised

1   transportation.[4]  Plaintiff's reliance on *Daniel v. Virgin Atlantic Airways Ltd.*,

2   59 F.Supp.2d 986 (N.D. Cal. 1998), is equally misplaced as the court held there that state

3   law claims arising from a delayed flight were cognizable under the Warsaw Convention,

4   albeit not damages for emotional distress.

5        Plaintiff also cites to *Schmeling v. NORDAM*, 97 F.3d 1336 (10th Cir. 1996), with

6   regard to the distinction between "complete preemption" and "conflict preemption."  (Mot.

7   at 8 n.3.)  However, the court there recognized that complete preemption exists where, as

8   here, "federal law not only preempts a state law to some degree but also substitutes a

9   federal cause of action for the state cause of action, thereby manifesting Congress's intent

10  to permit removal."  (*Id*. at 1342.)  *Tseng, Singh*, *Knowlton, Husmann, Paradis*,

11  *Mexico City* and other cases discussed above make it clear that the Warsaw and

12  Montreal Conventions were intended to substitute a federal cause of action for the state

13  cause of action where, as here, the challenged occurrence falls within the scope of the

14  Convention.[5]

15       In sum, for the reasons set forth above, the Montreal Convention completely

16  preempts Plaintiff's claims relating to the Mexican Tourism Tax.

17

18

19

---

20  [4]      Plaintiff claims that Alaska breached an express contractual undertaking by
    charging him the Mexican Tourism Tax despite his exempt status, but Plaintiff fails to
21  identify any specific provision in the Alaska Contract of International Carriage that Alaska
    allegedly breached.

22  [5]      Although Plaintiff does not cite *Serrano v. American Airlines, Inc.*,
    No. CV 08-2256 AHM (FFMx), 2008 WL 2117239 (C.D. Cal. May 15, 2008), Alaska
23  notes that the court there held that the Montreal Convention did not completely preempt
    passengers' claims that American Airlines improperly refused to allow their infant to sit on
24  their laps in business class seats.  Not only is *Serrano* not binding on this Court and at odds
    with the cases finding complete preemption discussed above – (indeed, the court
25  acknowledged the "split in the cases dealing with the doctrine of complete preemption"
    (*id.* at *5) – but it is also distinguishable because the court opined that under *Tseng*
26  "recourse to local law is available when one's claim *does* 'satisfy the conditions of liability
    under the Convention'."  (*Id*. at *4 (citation omitted).)  In other words, *Serrano* was not a
27  case like *Tseng* – or the present action – where the plaintiff was seeking "to raise a state
    law cause of action unauthorized   by the . . . Convention."  (*Id.*)

28

**B.    PLAINTIFF'S CLAIMS FALL WITHIN THE SCOPE OF THE MONTREAL CONVENTION**

Plaintiff's claims in connection with Alaska's handling of the Mexican Tourism Tax clearly fall within the scope of the Montreal Convention because they arise out of one or more "occurrence(s)" which took place either (1) when Plaintiff was onboard the Alaska aircraft; or (2) when Plaintiff was in the "embarkation process" because he was checking in for his flight to or from Mexico.

Article 17 of the Montreal Convention provides:

> The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place ***on board the aircraft or in the course of any of the operations of embarking or disembarking***.

(Montreal Convention, Art. 17(1) (emphasis added); *see King v. American Airlines, Inc.*, 284 F.3d 352, 360 (2d Cir. 2002) (Article 17 (of the Warsaw Convention) "directs [the court] to consider *when* and *where* an event takes place in evaluating whether a claim for an injury to a passenger is preempted") (emphasis in original).)

The fact that Plaintiff claims non-bodily injury is of no relevance to the jurisdictional inquiry. Article 29 of the Montreal Convention states that "in the carriage of passengers . . . any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise**, *can only be brought subject to the conditions and such limits of liability as are set out in this Convention* . . . .**" (emphasis added). In *Tseng, supra*, 525 U.S. 155, the Supreme Court held that the plaintiff's claim for non-bodily injury, although not actionable under Article 17 of the Warsaw Convention, was nevertheless within the scope of Article 17, which it read to cover "exclusively, the airline's liability for passenger injuries ***occurring*** 'on board the aircraft or in the course of any of the operations of embarking or disembarking'." (*Id.* at 171-72 (citing Article 17) (emphasis added). )

Here, the operative "occurrence" for purposes of the Montreal Convention was either: (1) when Plaintiff was onboard the Alaska aircraft and receiving the air

-8-

1    transportation for $22 more than he believes he should have owed; or (2) when Plaintiff

2    checked in at the California airport for his flight to Mexico and/or at the Mexican airport

3    for his return flight to California.  As Plaintiff does not dispute, if the operative occurrence

4    took place when Plaintiff was onboard the aircraft, it was clearly covered by the Montreal

5    Convention.   (*See* Convention Art. 17.)   Plaintiff was injured, if at all, by Alaska's

6    charging of the Tax when he actually took the flight – a flight for which he had to pay

7    $22 more than he claims he should have been charged – because if the Plaintiff had

8    decided not to board the Alaska flight, and was eligible for a refund of his ticket, he would

9    have been refunded the $22 Mexican Tourism Tax.  (*See* DECLARATION OF KEVIN THIEL

10   ("THIEL DECL.") ¶ 11 ("If a passenger cancels his or her ticket prior to a flight and is

11   entitled to a refund of the ticket price, Alaska also refunds the Mexican Tourism Tax that

12   was collected at the time that the ticket was purchased").)[6]

13          Alternatively, the operative occurrence was during airport check-in in California,

14   which was the *initial* time in which Alaska physically *could have* reviewed Plaintiff's

15   passport or other visa documentation to verify that Plaintiff was in fact exempt from the

16   Tax.  Alaska also theoretically could have determined whether Plaintiff possessed the

17   necessary documentation to qualify as exempt from the Tax when he embarked on his

18   departure from Mexico back to the United States.  Although airlines are required to collect

19   the Tax from passengers before they enter Mexico, the Mexican government requires

20   airlines to remit the Mexican Tourism Tax based on passengers transported on flights

21   departing Mexico.  (THIEL DECL. ¶ 5.)  Alaska's customer service agents stationed at

22   Mexican airports attempt to determine whether or not a passenger returning to the

23   United States is exempt from the Mexican Tourism Tax in order to complete the departure

24   manifest forms (in Spanish, the "Manifesto Salida") that are a prerequisite for aircraft to

25

26

27   _____
     [6]      The THIEL DECLARATION is attached to Alaska's Notice Of Removal.  (Dkt. # 1.)

28

W02-EAST:9RGG1\200125511.2                                          OPPOSITION TO MOTION FOR REMAND
Case No.:  C:08-03560 (JSW)

1  leave Mexico bound for the United States.  (*Id.* ¶ 9.)[7]  Alaska personnel are obligated to

2  check passengers' passports during the boarding process of flights from Mexico to the

3  United States, but may not become aware that a passenger holds a visa that entitles him to

4  exemption from the Tax.

5      The process of airport check-in is unquestionably part of the "embarkation" process.

6  In *Day v. Trans World Airlines, Inc.*, 393 F.Supp. 217 (S.D.N.Y. 1975), *aff'd*, 528 F.2d 31

7  (2d Cir. 1975), the court observed that "[u]nder modern conditions of international air

8  travel, the period between the moment a passenger enters the airport until he is safely

9  aboard the aircraft often comprises a substantial amount of time and effort, much of which

10  may be said reasonably to constitute embarking." (*Day,* 393 F.Supp. at 222.)  The court

11  specifically listed "present[ation] [of] tickets to TWA at the checking [sic] desk on the

12  upper level" as the first of 11 steps in the "embarkation" process.  (*Id.* at 221; *see also*

13  *Singh,* 426 F.Supp.2d at 48 (Warsaw Convention completely preempted claim that

14  passenger was injured by airline employees' conduct in placing his identification tag on

15  luggage containing illegal drugs, where the "accident" "occurred ***in the process of***

16  ***checking in itself***") (emphasis added); *King,* 284 F.3d 352 (claim that passengers were

17  "bumped" prior to boarding a flight because of their race preempted by the Warsaw

18  Convention because the "bumping" occurred as part of the embarkation process).)

19      Even Plaintiff concedes that flight check-in is part of the embarkation process.  In

20  discussing the case *Mbaba v. Societe Air France*, 457 F.3d 496 (5th Cir. 2006),

21  *cert. denied*, 127 S. Ct. 959 (2007), where the court held that the Warsaw Convention

22  preempted plaintiff's state law claims relating to his having to pay an excess baggage fee

23  at the time of check-in, Plaintiff acknowledges that "[i]n *Mbaba* plaintiff's ***damages***

24  ***occurred during check-in, that is during the embarking process for his trip*** and the court

25

26

27  ───────────────
[7]    A sample departure manifest form is set forth at Exhibit E to Alaska's Notice of Removal.  (Dkt. # 1.)

28

1  found his claims preempted." (Mot. at 11 (emphasis added).)[8]  Because Plaintiff's

2  damages also occurred during check-in – when Alaska arguably could have checked his

3  passport or visa documentation but failed to do so – his claims are similarly preempted by

4  the Montreal Convention.

5       There is no merit to Plaintiff's argument that the operative occurrence was when he

6  purchased his ticket and was charged the Mexican Tourism Tax. (Mot. at 11.)  The

7  Declarations attached to Alaska's Notice of Removal make it clear that it was not

8  physically possible for Alaska to have determined at the time of ticketing whether Plaintiff

9  qualified for an exemption to the Mexican Tourism Tax. (*See* THIEL DECL. ¶ 8 ("since the

10  vast majority of passengers purchase their tickets from Alaska through the internet or over

11  the telephone, it is ***not possible for our company to determine whether a customer***

12  ***qualifies for a Tourism Tax Exemption at the time that the ticket is purchased***")

13  (emphasis added);  DECLARATION OF STEVE JARVIS ¶ 5 ("When a passenger purchases a

14  ticket on Alaska through the internet or other computer system, or via our telephone

15  reservations call centers, ***it is not feasible for our employees to determine at that time***

16  ***whether or not the passenger can present the requisite proof of his or her exempt***

17  ***status***") (emphasis added); DECLARATION OF JEFF BUTLER ¶ 3(d) ("it is not feasible to

18  verify at the time of purchase whether or not that passenger qualifies for an exemption").

19  Noticeably absent from Plaintiff's moving papers is any attempt whatsoever to rebut this

20  uncontroverted testimony from Alaska.  Since Alaska clearly cannot be liable for failing to

21  perform an act that is impossible to perform, the operative occurrence cannot be Alaska's

22  inclusion of the Mexican Tourism Tax at the time Plaintiff's ticket was purchased.

23       Alaska maintains that it is not feasible to review the documentation of every

24  passenger that checks in for a flight between the United States and Mexico to determine if

25  the passenger is exempt from the Tax.  When a passenger purchases his ticket over the

[8] In *Tseng, supra*, the parties did not dispute that an intrusive pre-boarding search of a passenger "occurred in international transportation in the course of embarking." (*Tseng*, 525 U.S. at 166-67.)

OPPOSITION TO MOTION FOR REMAND

1  Internet or by telephone, it is *physically impossible* for the airline to examine the

2  passenger's passport or other documentation evidencing possession of a visa that renders

3  the passenger exempt from the Tax.  In contrast, it is physically possible during the airport

4  check-in process for the carrier's agent to review the passport and the relevant visa, if the

5  passenger possesses it.  Thus, the operative "occurrence" for purposes of the Montreal

6  Convention would be when Plaintiff checked-in for his flights, rather than when he

7  purchased his tickets.

8          In conclusion, Plaintiff's claims clearly fall within the scope of the

9  Montreal Convention because the operative occurrence was either when Plaintiff was

10  onboard the aircraft (and had to pay $22 more than he claims he should have for that

11  transportation) or when he was embarking on the flight to or from Mexico.

12

13  **C.        PLAINTIFF WAS NOT WITHOUT A REMEDY**

14          Application of the Montreal Convention to Plaintiff's claims does not mean that he

15  or other exempt passengers who have paid the Mexican Tourism Tax are without a

16  remedy.  To the contrary, all such passengers need to do is timely request a refund of the

17  Tax and provide proof of the passenger's exempt status.  Significantly, there is no merit to

18  Plaintiff's assertion that Alaska has "concede[d] it has no procedure by which an exempt

19  passenger (such as Plaintiff) may request a refund for a wrongfully imposed tax on a *used*

20  ticket." (Mot. at 12.)  To the contrary, the undisputed testimony from Alaska is that:

21          If an Alaska Airlines passenger who qualifies for a Tourism Tax Exemption
            paid cash for his or her ticket and requests a refund at the airport in Mexico,
22          the Alaska staff may provide a cash refund to that passenger.  However, the
            large majority of Alaska customers use credit cards to purchase their
23          tickets.  ***In those instances where a passenger that qualifies for a Tourism***
24          ***Tax Exemption bought the ticket with a credit card, he or she can request***
            ***and receive a refund of the Mexican Tourism Tax by contacting our***
25          ***Revenue Accounting Department and providing the necessary proof of***
26          ***exemption***.

27

28

W02-EAST:9RGG1\200125511.2                                              OPPOSITION TO MOTION FOR REMAND
Case No.:  C:08-03560 (JSW)

1    THIEL DECL. ¶ 10 (emphasis added); *see also* BUTLER DECL. ¶ 3(d) ("the exempt

2    passenger can apply for a refund by providing the necessary documentation to the

3    airline").

                                    **IV.**

4

5                    **CONCLUSION AND REQUESTED RELIEF.**

6             For all of the reasons set forth above, Alaska respectfully requests that this Court

7    deny Plaintiff's motion for remand.   Just as airlines should not be subject to contract

8    claims in state courts involving a three-dollar breakfast (*see Knowlton, supra*), they should

9    not be subject to contract claims in state courts involving a $22 tax.

10

11   Dated:  August 27, 2008

12                              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

13

14                    By      _____*/s/ Philip F. Atkins-Pattenson*_____
                                     PHILIP F. ATKINS-PATTENSON
15                                    Attorneys for Defendant
                                      ALASKA AIRLINES, INC.
16

17

18

19

20

21

22

23

24

25

26

27

28

                                        -13-